UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STUDIO & PARTNERS, s.r.l.,

       Plaintiff,

v.                                            Case No. 06-C-0628

KI (formerly KRUEGER INTERNATIONAL, INC.),

       Defendant.

**MEMORANDUM DECISION AND ORDER ON DEFENDANT'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

      Plaintiff Studio & Partners, s.r.l. ("S&P") alleges defendant Krueger International, Inc. ("KI") has, without compensation or permission, manufactured a line of furniture based on S&P's designs, and furthermore has filed for two patents in which it knowingly and falsely presented itself as the owner and inventor of the designs. S&P claims ownership of the design through Studio DeLucchi, a predecessor in interest. S&P also claims KI became aware of the designs through Casala, a corporation that later became a subsidiary of KI. Two of the counts in S&P's complaint involve allegations of fraud and a third alleges breach of a fiduciary duty. KI has moved under Rule 12(c) for judgment on the pleadings as to those counts, claiming they fail to meet the pleading requirements for fraud claims under Rule 9(b). *See* Fed. R. Civ. P. 9(b), 12(c). For the following reasons, defendant's motion will be granted in part and denied in part.

**FACTUAL BACKGROUND**

      Plaintiff's version of the facts, as gleaned from the complaint, and which must be taken as true in deciding KI's motion, is as follows. In 1995, Studio DeLucchi, an Italian partnership

working in the area of design, began a collaboration with the German division of a company entitled Casala. As part of this collaboration, Studio DeLucchi designed a line of furniture (the "CAMPUS" line) for use in educational settings. Studio DeLucchi's efforts included generating a number of design sketches and furniture prototypes. Shortly after the collaboration began, Casala ceased doing business. Casala was ultimately purchased by defendant KI.

Studio DeLucchi dissolved in the late 1990s, although the precise date is not given in the complaint. Certain members of the dissolved partnership then formed S&P, an industrial design company based in Milan, Italy. S&P inherited from Studio DeLucchi the goodwill and rights to the "CAMPUS" line of furniture.

After KI acquired Casala, S&P contacted KI to see whether KI would be interested in manufacturing the line of furniture that S&P had designed for Casala.[1] KI indicated it was not interested. To protect its interests in the work, S&P corresponded with KI so as to make sure KI was aware that the CAMPUS designs were the intellectual property of S&P. KI acknowledged as much. A short time after declining to pursue manufacture of the furniture line, KI changed its mind and contacted S&P about possible modifications. In reliance upon KI's representations, S&P made changes to the furniture's designs and then took those changes to KI. In January of 1998, S&P received from KI a letter indicating that it was no longer interested in the project.

KI displayed, and in 2003 launched, a line of furniture substantially identical to S&P's original CAMPUS designs, and KI continues to manufacture and sell this line of furniture (dubbed the "Intellect" line). Furthermore, KI filed for, and obtained, United States patent designs for

---

[1] The complaint is not clear as to whether Studio DeLucchi was still in existence at this time, or whether S&P was the actor here, asserting rights it had inherited from Studio DeLucchi.

furniture substantially identical to the original S&P designs–specifically, Patent No. D474,348 ("the '348 patent"), which issued for a chair, and Patent No. D474,356 ("the '356 patent), which issued for a desk.

S&P has brought claims against KI for, *inter alia*, fraud (Count I), misrepresentation (Count VI), and breach of fiduciary duty (Count II). KI has moved to dismiss these three claims under Rule 12(c), arguing that they have not been pleaded with the particularity required by Rule 9(b).

## ANALYSIS

A motion to dismiss under Rule 12(c) challenges the sufficiency of the pleadings in the complaint. *See* Fed. R. Civ. P. 12(c). Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see* Fed. R. Civ. P. 12(c). "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *N. Ind. Gun*, 163 F.3d at 452 (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). Thus, to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. *Id.* All well-pleaded facts are assumed to be true, and all such facts as well as the reasonable inferences therefrom are viewed in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). However, facts set forth in the complaint that undermine the plaintiff's claim are not ignored. *N. Ind. Gun*, 163 F.3d at 452. A court need not accept as true any legal conclusions or unsupported factual conclusions. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Ordinarily, the pleadings referenced in Rule 12(c) include the complaint, the answer, and any written instruments attached as exhibits. *N. Ind. Gun*, 163 F.3d at 452-53. However, when the basis of a party's 12(c) motion is failure to plead with sufficient particularity, the pleading requirements of Rule 9(b) must be met in the pleading itself, and may not be supplied in extraneous documents. *See Miller v. Gain Fin., Inc.*, 995 F.2d 706, 709 (7th Cir. 1993).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The purpose of the rule is not—as is often thought—to give the defendant sufficient information to prepare his defense; rather, its purpose is to minimize the extortionate impact that a baseless claim of fraud can have on a party, by requiring the plaintiff to do more than the usual investigation before filing his complaint. *See Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). It is important to note that the rule requires the plaintiff to plead with particularity the "circumstances" of fraud, not the elements of fraud. In the Seventh Circuit, this means "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In a more expansive interpretation, the Seventh Circuit has stated that Rule 9(b) requires the plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). This specificity requirement extends only to the particulars of the allegedly misleading statement itself; the other elements of fraud, such as intent, knowledge, and reliance, may be averred in general terms under

4

the notice-pleading standard. *Treadwell v. St. Joseph High Sch.*, No. 98-C-4906, 1999 WL 753929, at *5 n.5 (N.D. Ill. Sept. 15, 1999); *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004); *see also* Fed. R. Civ. P. 9(b). Finally, where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act, such a claim is also subject to Rule 9(b), and so must be pleaded with particularity. *Thornton v. Evans*, 692 F.2d 1064, 1083 n.43 (7th Cir. 1982) (citing *Robinson v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966)); *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006).

**Counts I and VI (fraud/misrepresentation)**

Under Wisconsin law, the elements for a claim of fraud are (1) a false representation of fact; (2) made either knowing that it was untrue, or recklessly not caring whether it was true or false; (3) made with the intent to deceive the plaintiff in order to induce the plaintiff to act on it to plaintiff's pecuniary damage; and (4) plaintiff's detrimental reliance on the representation as true. *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 17, 723 N.W.2d 156, ¶ 17. Wisconsin also recognizes a claim for fraudulent concealment when there is a duty to disclose. *See Ollerman v. O'Rourke Co., Inc.*, 288 N.W.2d 95, 99-100 (Wis. 1980). The elements of fraudulent concealment are similar to those of fraudulent misrepresentation. However, in lieu of establishing that the other party has made fraudulent misrepresentations, the plaintiff must show that the party failed to disclose a material fact. *Id.*

According to S&P's first count, KI defrauded S&P by knowingly misrepresenting to the United States Patent and Trademark Office ("PTO") that KI and its employees were the original inventors of the CAMPUS designs, and by failing to disclose to S&P that it had filed a patent application. By failing to disclose the patent applications to S&P, S&P claims KI caused S&P to

5

"unknowingly and unwillingly forfeit its rights to the intellectual property" at issue. S&P alleges that KI had a duty to disclose the patent applications and to disclose that it was using the CAMPUS designs in commerce. (Compl. ¶¶ 22-25.)

KI, for its part, argues that S&P has not indicated how this alleged duty arose. It is well established that in the absence of a special relationship, there is no duty to disclose and, thus, a failure to do so cannot be considered fraudulent. *See Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp.2d 978,995 (E.D.Wis. 2000) ("The general rule is that silence is not a misrepresentation-unless a party has a duty to disclose."). However, such a duty can arise between parties to a joint venture, *see Knudson v. George*, 147 N.W. 1003, 1004 (Wis. 1914), and S&P's complaint does allege that a joint venture existed between it and KI. KI points out that S&P's allegation that a joint venture existed between them is conclusory and therefore fails to satisfy the particularity requirement of Rule 9(b). However, the genesis or existence of these duties has no bearing on whether S&P has satisfied the pleading requirements under 9(b) as to Count I. What matters is whether S&P has pleaded in sufficient detail the "who, what, when, where, and how" *of the allegedly fraudulent statement(s)*. The other elements of the alleged fraud may be averred in general terms.

As to the portion of the claim where particularity is required, KI argues that Count I should be dismissed because there is no allegation as to who made the allegedly fraudulent statements. Alleging that the representation was made by a defendant corporation without identifying the individual representative or agent of the corporation that made it, KI suggests, fails to comply with Rule 9(b). In essence, KI argues the allegations are defective because no individuals are named.

The gravamen of Count I, however, seems to be KI's failure to disclose to S&P that it had applied for patents on S&P's design without disclosing S&P's role in the design to the PTO.

6

Although S&P also alleges as part of Count I that KI made an affirmative misrepresentation to the PTO, that allegation cannot state a claim as to S&P since the misrepresentation alleged was not made to S&P. Instead, it appears that Count I seeks to impose liability for fraud on KI for fraudulent concealment. The particularity requirement for pleading fraud would seem to operate somewhat differently in fraudulent concealment cases than it does where fraudulent misrepresentations are affirmatively alleged. When the fraud is alleged to consist of the failure to disclose, as opposed to making a false representation, the requirement that the speaker be identified makes no sense. The wrong alleged is that no one spoke when there was a duty to do so. One cannot identify the speaker of a representation that was never made. I therefore conclude that by generally alleging that KI failed to disclose material facts, i.e., the fact that it had applied for patents on the design, S&P has pleaded its claim of fraud in Count I with sufficient particularity.

Count VI differs from Count I, however, in that in Count VI S&P alleges that KI affirmatively misrepresented its intentions to commercially utilize the CAMPUS design. Paragraph 15 of the complaint, which is incorporated by reference in Count VI, alleges that "in January 1998, S&P received a letter from KI misrepresenting it was no longer interested in the project." (Compl. ¶ 15.) KI argues that S&P has insufficiently articulated who at KI feigned disinterest in pursuing manufacture of the furniture.[2] KI also argues that S&P has not pleaded with sufficient particularity that it detrimentally relied on KI's allegedly false representation.

---

[2] KI also argues that S&P has insufficiently articulated who at KI acknowledged that S&P owned the rights in the designs, when such representations took place, and what type of agreement formalized this acknowledgment. (Reply Br. at 8.) However, for purposes of a 9(b) analysis, the allegedly misleading communication is the January 1998 letter, not KI's acknowledgment of S&P's rights in the designs, for the latter, in S&P's eyes, is a *true* representation of fact.

7

Detrimental reliance is one of the elements of fraud that can be pleaded in general terms under the liberal notice-pleading standard. *Treadwell*, 1999 WL 753929, at *5 n.5; *Rodi*, 389 F.3d at 15; *see also* Fed. R. Civ. P. 9(b). However, the person who made the allegedly false statement should be identified especially where, as here, a corporate defendant is involved and allegations concerning its one-time subsidiary. As noted above, the circumstances of fraud or mistake include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). This is not a case in which the plaintiff lacks access to facts necessary to detail its claim. *See, e.g., Corley v. Rosewood Care Center, Inc.,* 142 F.3d 1041, 1051 (7th Cir. 1998). S&P offers no explanation why the speaker of the alleged misrepresentation could not be identified, and none appears from the record. I therefore conclude that Count VI should be dismissed with leave to plead over.

**Count II (breach of fiduciary duty)**

Finally, in Count II, S&P alleges that KI's conduct also amounts to a breach of fiduciary duty. S&P alleges that such a duty arose by virtue of a joint venture that S&P and KI entered into. KI attacks the breach claim by arguing that S&P has failed to provide a basis for the alleged fiduciary duty, and more particularly, has failed to allege the elements of a joint venture that would give rise to such a duty. *Citing Thornton v. Evans*, 692 F.2d 1064, 1082 n.43 (7th Cir. 1982), KI argues that S&P's breach of fiduciary claim is also subject to Rule 9(b)'s particularity requirement. Because the complaint fails to allege further facts to support the existence of a joint venture, KI contends Count II should be dismissed.

But *Thornton* supports the application of Rule 9(b) to a breach of fiduciary claim only where the breach alleged is fraud. *See Robinson v. Caster*, 356 F.2d 924, 925 (7th Cir.1966). Count II alleges that KI breached its duties of loyalty, disclosure, and care, as well as other duties that arise under the doctrine of corporate opportunities. (Compl. ¶ 28.) Rule 9(b), to the extent it applies at all, would apply only to the failure to disclose, which has already been discussed in connection with Count I. Because the particularity requirement extends only to the allegedly fraudulent statement itself, I conclude that S&P's complaint does not fall short of Rule 9(b) by alleging the joint venture and the concomitant fiduciary duty in general terms. (Compl. ¶¶ 11, 27, 28.) It is enough if the complaint provides sufficient notice of the claim being asserted. Count II meets this standard, and KI's motion will therefore be denied as to it.

**IT IS THEREFORE ORDERED** that defendant's motion for partial judgment is granted as to Count VI, and that count is ordered dismissed without prejudice. The motion is denied as to Counts I and II.

Dated this      27th      day of December, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
