# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

STUDIO & PARTNERS, s.r.l.,

        Plaintiff,

    v.                                        Case No. 06-C-0628

KI (formerly KRUEGER INTERNATIONAL, INC.),

        Defendant.

## DECISION AND ORDER

Plaintiff Studio & Partners (S&P) has moved for reconsideration, under Fed. R. Civ. P. 59, of my November 7, 2007 decision and order dismissing the six claims it brought against defendant KI. Principally, S&P asserts that this court relied on an incorrect interpretation of Italy's statute of limitations when it concluded that four of its claims were time-barred. It further asserts that I erred in dismissing its correction of inventorship and fraudulent concealment claims.

It is a well-worn principle that arguments presented for the first time in a Rule 59 motion are seldom worthy of consideration. S&P cites cases in which district courts did consider late-filed arguments, and it asserts that when matters of foreign law are at stake, a court is under a heightened obligation to resolve the issues on their merits. *Twohy v. First Nat'l Bank,* 758 F.2d 1185, 1193 (7th Cir. 1985). Of course, there is little dispute that a district court *may*, in its discretion, consider an untimely argument under certain circumstances. The question here, however, is whether such discretion is properly employed when a plaintiff fails to contest – and even appears to *concede* – a point on which a district court's opinion turns. Naturally, if courts had no other cases to work on

and if lawyers worked for free, the plaintiff's exhortation to "get it right" would meet with little resistance. In the context of complex litigation undertaken by represented commercial entities, however, courts are entitled to hold parties to the arguments they advance (and those they don't), a practice that gives summary judgment rules a backbone and ensures more efficient litigation than the plaintiff's course of action reflects in this case. As set forth below, I conclude that S&P has not presented any persuasive basis upon which this court should reconsider its decision entering summary judgment in favor of KI.

## I. Italian Statute of Limitations

The bulk of S&P's motion for reconsideration addresses my dismissal of its state law claims for being barred under the Italian statute of limitations. The central dispute is whether Italy's statute of limitations includes a kind of "discovery rule," which would postpone triggering of the limitations period until the nature of the injury was reasonably discovered by the plaintiff. In my November 7 decision, I concluded – based on KI's patently reasonable presentation of Italian law and S&P's failure to contest it – that Italy did not have such a rule. Because I concluded that the statute of limitations clock began ticking on the date the torts were allegedly committed, I did not consider S&P's argument that it had reasonably failed to *discover* those torts until much later.

Soon after judgment was entered, S&P filed an affidavit signed by two Italian lawyers who assert that Italy *does* have a sort of "discovery rule" and thus the statute of limitations would not begin running until the injury was (or should have been) discovered. Regardless of the merit of S&P's new position – which is not a given – S&P has not supplied a persuasive excuse for its failure to raise the issue earlier. I further conclude that the fact that the question involves foreign law does not trump the standard considerations of waiver or relieve a party from its obligation to

2

make its arguments known at the summary judgment stage rather than in a motion for reconsideration. S&P's arguments are addressed below.

**1. S&P's Arguments are Novel**

S&P weakly argues that it actually did raise the statute of limitations issue earlier, but that is simply untrue. In the November 7 decision granting KI's motion for summary judgment on the basis of the Italian statute of limitations, I described S&P's arguments as follows:

> S&P raises two principal arguments in opposition [to dismissal on timeliness grounds]. First, it asserts that the claims are not covered by the borrowing statute and thus Italy's statute of limitations should not apply. Second, even if Italy's five-year statute of limitations applies, the time period should be equitably tolled because S&P was unaware of KI's conduct until 2005.

(Dkt. # 358 at 5.) This characterization of S&P's arguments was based on my reliance on S&P's brief in opposition, in which it set forth those two grounds (and only those two) for denial of the motion for summary judgment on timeliness grounds. Beginning at page 8 of its brief, S&P asserted that the borrowing statute should not apply; at page 11, it asserted that even if the borrowing statute applied, "the claims were timely filed since the limitations periods were subject to equitable tolling or equitable estoppel." (Dkt. 299.) S&P's brief further alleged, in a footnote, that KI had misstated the relevant triggering principles that would apply under *German* law. (Dkt. # 299 at 11 n.11.) Notably, nowhere did S&P assert that KI's presentation of Italian law was incorrect. In a nutshell, S&P's clear position was that Italian law either did not apply or, if it did, it should be "equitably tolled."

In the November 7 decision, I disagreed with S&P and concluded that Wisconsin's borrowing statute *did* apply. I further disagreed with S&P in finding that there was no basis to apply equitable tolling principles. Because such was the extent of S&P's defense, and because KI's

3

reasonable presentation of Italian law went uncontested, I concluded that KI was entitled to the relief it sought and that the Italian statute of limitations barred recovery. S&P's present argument on Italian law is thus wholly novel.

**2. S&P was not Prejudiced by KI's Behavior or the Court's Treatment of any Discovery Motions**

That S&P's argument is novel is not dispositive: under some circumstances a court may excuse a party's failure to raise an issue at the proper time, and S&P cites two grounds on which it believes relief is justified. First, KI had asserted statute of limitations defenses based on the laws of three countries (the United States, Germany and Italy) and S&P states that it was unclear as to which of these countries' laws would ultimately become the focus of KI's defense. It further asserts that this court's failure to address certain of the discovery motions hindered S&P's ability to obtain discovery on the opinion letter submitted by KI's Italian law expert or otherwise respond to the Italian law argument at issue.

S&P's first excuse is wholly unsatisfactory and worthy only of brief discussion. S&P portrays itself as being lost in a haze of multiple and shifting theories put forth by KI, as though KI's use of alternative defenses was somehow so confusing that S&P simply threw its hands up and was unable to cope. In this court's November 7 decision, I did note with some dismay that there had been several shifting theories of the case from the beginning, yet this court had no difficulty interpreting KI's motion for summary judgment on Italian law principles. In fact, S&P timely responded to the motion and addressed most of its points, even displaying an impressive facility with other matters of foreign law. Once the motion was filed, there was no doubt as to what KI's defense was – certainly it could not come as a shock to S&P, an Italian company that suffered its

4

injuries in Italy, that KI would assert the Italian statute of limitations as a defense.  In fact, as discussed below, S&P was on notice of KI's exact position on the statute of limitations as of May 1 – well before the summary judgment motion was even filed.  There is thus no basis to grant relief to a party merely because the other side had put forth a series of defenses, especially perhaps when the allegedly surprised party was represented by several attorneys.[1]

S&P's second excuse fares no better.  It asserts that this court's failure to decide several discovery motions precluded S&P from engaging in meaningful discovery as to the allegedly erroneous Italian law principles relied on by the court.  Had the court considered the motions (and granted them), KI would have been compelled to provide more information about its defenses and S&P would have been able to conduct discovery and present its Italian law arguments earlier.  Naturally, as in *Deere & Co. v. Ohio Gear,* a court could be in error if it failed to address a discovery motion that later proved material to a party's presentation of its case.  462 F.3d 701, 703 (7th Cir. 2006) ("Without addressing the pending discovery dispute, the district court then treated

_____

[1] Throughout its briefs seeking reconsideration, S&P seems to believe that it was entitled to a chapter and verse presentation of the exact nature of KI's arguments long before summary judgment was even briefed.  Such detail is simply not required by any rule, however.  In addition, as noted elsewhere in this opinion, KI's argument was not a complex one and merely involved an interpretation of the statute of limitations of the plaintiff's own country.  *See Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.,* 426 F.3d 580, 585 (2d Cir. 2005) ("[W]e must resolve whether Hyundai waived the foreign law argument by simultaneously pleading the applicability of English, Swedish, Korean, or Panamanian law, and not settling conclusively on one body of foreign law. We must determine whether the District Court's determination that Hyundai waived this argument was proper. We now clarify that alternative theories may well suffice as reasonable notice when, as here, relevant events occurred in multiple foreign locations and legitimately point to several different applicable bodies of law. We therefore find that the parties gave proper Rule 44.1 notice and the applicability of foreign law was not waived. We hold that the District Court's decision that notice was not proper and that therefore Hyundai waived the foreign choice of law argument exceeded its discretion.")

5

Deere's failure to respond to the summary judgment motion as an admission (invoking its local court rule) and granted summary judgment for Ohio Gear. Under the procedural circumstances of this case, this was an abuse of discretion.") That is not the case here, however. In fact, as I noted in granting summary judgment to KI, none of S&P's undecided discovery motions had anything to do with the particular statute of limitations defense raised in the defendant's June 1 motion for summary judgment. As described below, the only arguably relevant filing was a *reply* brief S&P filed in support of a motion to compel; but even that brief expressed only unspecific objections to arguments KI had not even yet raised. Moreover, the reply brief was not the proper vehicle for seeking new relief nor for making substantive objections to the defendant's later-filed summary judgment motion.

S&P cites three filings (two motions and the reply brief described above) that it believes pertained to the statute of limitations defense and should have considered by the court prior to entry of summary judgment. (Dkt. # 307, 203 and 246, which is a reply brief to 203). I will address these in turn.

### S&P's Motion to Compel, Dkt. # 307 (Filed July 11, 2007)

In my November 7 decision on summary judgment, I addressed this motion but found it irrelevant. The decision noted that "S&P also sought discovery related to KI's foreign law experts, but its motion [Dkt. # 307] does not relate to the narrow foreign statute of limitations issue considered above." (Dkt. # 358 at 16.) Indeed, subsequent review confirms that the motion in question [307] dealt with the topics of the corporate relationship between KI and Casala-KI as well as direct liability under German law. For relief, the motion sought an order requiring that the "authors of the foreign opinion letters be ordered to disclose what information they relied upon *on all of the aforementioned issues,* [i.e., German law] and in particular on the issues of the conversion

6

to partnership and facts relevant to piercing the corporate veil issue [sic]." (Dkt. 307 at 19.) The motion thus had nothing to do with the Italian (or any) statute of limitations, and it is unclear why S&P now believes this court's treatment of the motion should excuse S&P's late filing of an affidavit addressing the statute of limitations.

Although the motion had nothing to do with the statute of limitations defense (and thus did not prejudice S&P's case), at this point it is worth exploring the premise that underlies much of S&P's current effort. Specifically, S&P argues that without the ability to conduct discovery (given KI's intransigence and the court's inaction on its discovery motions) it had no way to present any foreign law on its own or contest the defendant's presentation of that law. At least two reasons cause me to reject this premise. First, by its very nature the key question does not require "discovery" any more than the statute of limitations of Kansas does. S&P cites numerous cases holding that discovery on matters of foreign law is often important, which is true – for instance, discovery could have been meaningful as to the matters delineated in S&P's motion to compel, including *factual assumptions* relied on by legal experts involving questions of KI's corporate identity. Yet the issue facing S&P was a straightforward legal question: does Italy have something tantamount to a "discovery rule," or does the statute of limitations begin from the date of the event in question? Although S&P points the finger at KI and this court for S&P's failure to respond to the Italian law issue, nowhere in any of its motions (including the motion for reconsideration) does S&P plausibly explain why it could not have filed a response to the merits of KI's Italian law defense. *Cf. Farmer,* 81 F.3d at 1450 (relief justified if "the facts needed to oppose summary judgment were within the exclusive control of the defendant and that the incompleteness of discovery was the defendant's fault.") (citing *Resolution Trust Corp. v. North Bridge Associates,*

7

22 F.3d 1198, 1208 (1st Cir. 1994)).[2]  Notably, S&P has been able to raise the issue without the

benefit of any discovery, just as it did in its summary judgment brief on the question of the *German*

statute of limitations.   It is thus clear that the very nature of the question is not one that lends itself

to discovery, much less *requires* it.

 A second reason to reject S&P's premise that discovery was required is that the law in

question was hardly "foreign" to S&P at all.  The operation of a large country's statute of limitations

should not be a difficult matter to ascertain: S&P, after all, is an Italian company represented by a

large law firm, and KI notes that a member of that firm who worked on this case has a law degree

from the University of Bologna and is licensed to practice in Italy.  S&P  has not cited any precedent

requiring discovery on foreign law when the party seeking discovery is a citizen of the very country

whose law is being applied.  It is one thing for an unsuccessful party to claim unfairness due to the

application of a law that is actually foreign to it, but it rings hollow to claim that S&P was unfairly

surprised or prejudiced due to the application of its own country's law.

### S&P's Motion to Compel, Dkt. # 203 (April 9, 2007)

 A second motion S&P believes I should have considered was a cross-motion to compel KI's

responses to unanswered interrogatories.  (Dkt. # 203.)  The motion was filed (in the context of a

response to KI's own motion to compel) on March 9, 2007, and, while it alleged in passing that KI

had failed to identify its basis for asserting the statute of limitations defense, the crux of the dispute

involved KI's defense that S&P lacked standing.  The motion simply made no substantive argument

that KI's statute of limitations defense should not be allowed, and the only relief it sought was an

---

[2] Rule 56(f) was amended slightly, effective December 1, 2007, and any changes to the rule
are immaterial.

Case 1:06-cv-00628-WCG   Filed 02/14/08   Page 8 of 30   Document 370

order "compelling KI to fully respond to S&P's Interrogatory Nos. 5, 6, 8, 9, 11 and 12." (Dkt. # 203 at 11.)

To the extent the motion sought a fuller response on the statute of limitations issue, KI actually provided one on May 1. Specifically, in a supplemental response to its Rule 44.1 disclosures, KI informed S&P that it would be relying on Italian law, namely Article 2947 of the Italian Civil Code. (Dkt. # 290, Ex. J.) The disclosure stated that "Article 2947 of the Italian Civil Code provides similar limitations to filing claims after five years from the fact in which the origin of the claim for damages was committed." (*Id.*) Thus, S&P was given not only the statutory basis for KI's assertion of the Italian statute of limitations – it was told KI's *explicit* interpretation of that law, namely that the period began running "five years from the fact in which the origin of the claim for damages was committed." (*Id.*) As such, the relief sought by S&P's motion to compel was moot as of May 1 because KI identified the exact nature and source of its defense. Rule 44.1 does not require any more. *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.,* 426 F.3d 580, 586 (2d Cir. 2005) ("a litigant must provide the opposing party with reasonable notice that an argument will be raised, but the litigant need not flesh out its full argument at the Rule 44.1 stage.")

### Reply Brief to Motion to Compel, Dkt. # 246 (May 12, 2007)

The only foreshadowing of the arguments S&P now makes is found in its reply brief to its earlier cross-motion to compel. (Dkt. # 246.) Filed on May 12 (i.e., after receiving KI's Rule 44.1 disclosure), the reply brief fleshes out S&P's complaint that KI had not earlier provided responses to its questions about any statute of limitations defenses. At pages 10 and 11 of its reply brief, S&P expresses frustration with KI's approach, suggesting that KI had still not explained how or which

9

foreign law would apply. (Dkt. # 246.) For relief, the May 12 reply brief sought an order compelling KI to give fuller explanations of its statute of limitations defenses, and further sought an order "[t]hat KI not be allowed to advance its new 'foreign law' theory by submitting 'opinions from foreign counsel' that have never been identified as part of KI's Rule 26 disclosures . . ." (Dkt. # 246 at 12-13.) This relief was not sought in S&P's original motion to compel.

Although S&P's reply brief of May 12 expresses S&P's complaints (albeit hypothetical ones at that point) about KI's statute of limitations defenses, at least three reasons persuade me that S&P's May 12 brief does not constitute grounds for excusing S&P's failure to address the arguments KI raised in its June 1 summary judgment brief. First, as noted earlier, much of the relief sought in the reply brief became moot once KI's June 1 summary judgment motion was filed. By that time, S&P had full knowledge of all of KI's arguments and was able either to address them (which it did) or seek more time to respond or assert some other kind of concrete prejudice. The bulk of its discovery motion was directed at requiring KI to provide more detail as to its foreign law arguments, and KI made those arguments explicit on May 1, and then June 1 in its summary judgment brief – only 3 weeks after the S&P filed its May 12 reply brief. It remains unclear what other information S&P would have been entitled to.

Second, it should go without saying that a reply brief – like a motion for reconsideration – is hardly the correct vehicle for raising new arguments, and the issues S&P raised in its brief were certainly different from those raised in its original motion. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.,* 491 F.3d 625, 630-631 (7th Cir. 2007) (noting that "it is well-settled that arguments first made in the reply brief are waived.") This is true regardless of what a party puts in the caption to the motion – here, S&P styled its reply brief a reply and "supplemental motion for

10

relief." It is true that, in the context of this case, the genesis of S&P's objection did not arise until *after* KI had filed its May 8 letter and May 1 Rule 44.1 disclosure indicating that it would be invoking Italian law (or after KI's May 1 Rule 44.1 supplement), and so naturally S&P could not have made its objections earlier. Yet that does not justify seeking new forms of relief (e.g., precluding KI from relying on foreign law theories) in what is effectively a reply brief.

More importantly, even if I would have considered the relief sought in the reply brief as being properly before the court, S&P's motion would not have been granted. To reiterate, it is unclear what further relief would have been warranted given that S&P had known as of May 1 exactly what KI's Italian law defense was (the statute as well as KI's interpretation of the statute). Moreover, it is not as though KI's defense was mysterious or exotic: S&P had sued it for actions that occurred long ago, and KI was simply stating its position that Italy's statute of limitations barred such claims. S&P's reply brief (or "supplemental motion for relief") sought vague protections against KI's ability to advance "foreign law" theories, but identified no prejudice S&P would have suffered and failed to explain why S&P would be unable to respond to such arguments or provide its own analysis of Italian law.[3] This is especially telling given that S&P (a foreign company itself) showed ample ability and inclination to engage KI in numerous other matters of foreign law.

Most obviously, S&P's more recent actions have wholly undercut any claim that it was hamstrung either by KI's actions or this court's failure to address its discovery motions. Within the space of a few days following my ruling on summary judgment, S&P somehow cobbled together

---

[3]And, as discussed below, the proper course would have been to file a Rule 56(f) motion within the context of summary judgment or the even easier method of simply objecting to KI's presentation of foreign law once its argument was clear.

11

an affidavit signed by two Italian lawyers addressing the very issue S&P never raised until now. Such an affidavit could obviously have been filed long ago: it was produced without additional discovery and without the court acting on any of the discovery motions. This demonstrates that S&P was not prejudiced either by KI's own conduct or by this court's treatment of its discovery motions. S&P knew since May 1, and certainly June 1, exactly what KI's argument was, yet it simply remained silent in the face of that argument. Clearly, S&P's failure to file the affidavit earlier was not due to any actions taken (or not taken) by this court or by the defendant – S&P simply failed to put into issue at the appropriate time what it now asserts is a central dispute in this case.

### 3. In Context, S&P's Actions Evidence a Deliberate Waiver of the Issue Altogether

Above I have rejected both of S&P's grounds for excusing its untimely argument and found no just reason to excuse its failure to raise the issue earlier. It is worthwhile to explain, however, that my decision is not based solely on S&P's silence on the issue during summary judgment briefing. This is not a case where a party is being penalized for a single, isolated failure to address the other side's argument. Instead, when viewed within the context of several other factors, S&P's silence at the summary judgment stage suggested not only a failure to argue the issue but a deliberate concession of that issue:

- Having raised nonspecific objections in its May 12 brief, S&P nevertheless addressed KI's foreign law arguments in its July 3 summary judgment brief and expressed no inability to do so or prejudice due to lack of discovery, rendering stale its earlier objections
- In its July 3 brief, S&P failed to request a continuance or other relief under Rule 56(f)
- S&P's filings evidenced substantial fluency in matters of foreign law
- S&P's July 3 brief took issue with KI's presentation of *German* law (but not Italian law)
- S&P filed a motion, on August 7, objecting to certain of KI's arguments but still remaining silent on the Italian law issue

12

I will briefly address each of these considerations below.

Throughout the course of these proceedings, until now the only place S&P actually made a substantive objection to KI's statute of limitations defenses was in its May 12 reply brief (also known as the "supplemental motion") filed in support of its motion to compel. As noted earlier, S&P sought relief from arguments not yet raised by KI and wanted prospective protection from unspecified "foreign law" issues KI might raise. Yet after KI made explicit its foreign law arguments in its June 1 summary judgment brief (an argument anticipated by its May 1 disclosure), S&P failed to object to them on the grounds it now raises. It did not even seek to incorporate any of the arguments it had raised in its May 12 reply brief or suggest that KI should in any way be precluded from raising the arguments it made. S&P did not assert that it needed more discovery, nor did it assert that it needed additional time to obtain its own experts. Practically speaking, when a party makes an anticipatory hypothetical objection but fails to renew it once the concrete substance of the issue is later aired, and when that party joins the issue fully without seeking other relief, a court is entitled to view the earlier objection as having lapsed.[4]

Ironically, a case S&P cites supplies useful guidance that S&P should have heeded: in *Deere, supra,* the Seventh Circuit noted that "[w]hen a party thinks it needs additional discovery in order to oppose a motion for summary judgment in the manner Rule 56(e) requires, Rule 56(f) of the Federal Rules of Civil Procedure provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary." 462 F.3d at 706 (7th Cir. 2006); *Farmer v. Brennan,* 81 F.3d 1444, 1449 (7th Cir. 1996) ("What if the

---

[4]As noted earlier, S&P's objections would not have received relief from the court in any event, as discovery was not required on the issue at hand and KI had already provided an ample explanation of its Italian law defense.

13

adverse party, for legitimate reasons, has not yet gathered its supporting materials? Rule 56(f) allows that party to bring its problems to the court's attention, and the court is empowered either to refuse the application for summary judgment or to grant a continuance to permit the necessary discovery.")

When a party fails to make use of Rule 56(f), courts routinely reject later efforts to undo summary judgment on the basis of outstanding discovery issues. As the Tenth Circuit found:

> the affidavit of Ms. Hackworth's counsel attached to her motion for reconsideration, which was filed following the district court's grant of summary judgment, is ineffectual because it was untimely. A nonmoving party wishing to invoke the protections of Rule 56(f) must attempt to do so by submitting an affidavit in direct response to a motion for summary judgment, not following the district court's disposition of that motion. *See Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998) ("[T]he nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and *Celotex* or explain why it cannot pursuant to Rule 56(f). Otherwise, the nonmovant acts, or fails to act, at its peril." (internal citation omitted)). Rule 56(f) grants the district court the power to either deny a summary judgment motion or order a continuance; it does not grant the power to vacate a prior grant of summary judgment so that additional discovery can be conducted.

*Hackworth v. Progressive Casualty Ins. Co.,* 468 F.3d 722, 732-733 (10th Cir. 2006); *see also Fanning v. Metropolitan Transit Authority of Harris County, Tex.,* 141 Fed.Appx. 311, *315, 2005 WL 1792690, **3 (5th Cir. 2005) ("A Rule 56(f) motion, not one for reconsideration, is the proper remedy for a party claiming summary judgment is inappropriate because of inadequate discovery."); *Bartolomeo v. Plymouth County House of Corrections,* 2000 WL 1164261, *2 (1st Cir. 2000) ("Both plaintiffs complain that the district court acted prematurely in entertaining the summary judgment motion without affording adequate time for discovery. Yet they never moved for relief under Fed.R.Civ.P. 56(f) or otherwise voiced any such objection below. The issue has thus been waived . . .")

14

Moreover, Rule 56(f) requires an *affidavit* setting forth specific reasons that discovery is required, and plaintiff's counsels' bare and unspecific assertions – for example, those contained within their May 12 reply brief – do not satisfy that requirement. "While Woods did ask the district court to postpone its ruling until he could depose Flores and the officers, he did not file an affidavit outlining his reasons for needing further discovery as contemplated by Rule 56(f). This alone justifies affirmance of the district court's decision." *Woods v. City of Chicago,* 234 F.3d 979, 990 (7th Cir. 2000). It is clear that "[a]dvocacy by counsel does not suffice for evidence or fact in the Rule 56(f) context," and thus there is no reason to conclude that S&P even came close to invoking Rule 56(f). *Id.* (quoting *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992)). That failure is a further basis on which to find waiver.[5]

Although S&P's silence and failure to seek relief under Rule 56(f) are crucial, equally important is what S&P *did* say in its response brief. First, its brief (and other filings) demonstrate ample engagement in matters of foreign law and a sound ability to research and apply it – S&P's filings are replete with citations to foreign statutes and cases, and it is impossible to believe that a relatively mundane matter like the statute of limitations could have flummoxed S&P. Given S&P's manifest fluency with foreign law, the only reasonable impression was that S&P could easily have contested the matter had it chosen to do so. Second, S&P's brief objected to KI's presentation of

---

[5]I further note that even if the novel relief sought in S&P's May 12 reply brief would have been considered as an *ersatz* Rule 56(f) motion, none of the issues raised therein would have alerted the court to any concrete reasons that S&P could not have adequately opposed KI's summary judgment motion. The rule requires that a party file an affidavit and show why it "cannot" provide sufficient evidence by affidavit and, as noted throughout, S&P's recent actions demonstrate the relative ease with which the allegedly crucial information could have been obtained.

15

*German* law yet remained silent about *Italian* law. S&P's only objection pertinent to the statute of limitations issue came in a footnote:

> KI even misstates the triggering of limitations in the foreign countries. Under German law, triggering of the statute of limitations requires the claimant's awareness, or *grossly negligent* behavior leading to a lack of awareness, of *all facts* that give rise to a claim. BGH NJW 1993, 648; *Palandt-Heinrichs,* 65. Aufl. 2006, § 199 Rz. 27; *Staudinger,* BGB, § 199 Rz. 45.

(Dkt. # 299 at 11 n.11.) The footnote does not mention Italian law. By objecting to KI's presentation of German law but not even mentioning Italian law in its brief, the principle of *inclusio unius est exclusio alterius* suggests S&P was conceding that KI's version of Italian law was correct, or at least that S&P was not disputing it. This is especially suggestive when S&P's German law argument suggested that Germany had a kind of discovery rule – an argument essentially identical to the argument it now makes about Italian law. The key issue was thus not lurking in a dark corner of the case but was clearly on the table and recognized by both sides – S&P simply failed to contest it. In short, S&P's response brief not only failed to alert the court that S&P needed more time to investigate KI's argument or that a genuine issue could exist as to the correctness of KI's Italian law arguments, its treatment of the issue allowed this court to take the view that S&P's hypothetical objections to KI's foreign law arguments (made only in its earlier discovery motion reply brief) were superceded by its evident willingness to address KI's arguments on the merits. Put another way, S&P was under an obligation to make a concrete objection either to the merits of KI's statement of Italian law or to raise some flag citing a concrete reason why reaching the merits of KI's argument would be prejudicial. Fed. R. Civ. P. 56(f). By proceeding as though KI's presentation of Italian law was correct, S&P waived the issue.

Finally, if there had been any doubt as to how to interpret S&P's silence, one final indicator of waiver arises from S&P's continued silence in response to KI's summary judgment *reply* brief.

Like this court, KI had evidently found it crucial that S&P's response brief had not contested the fact that the Italian statute of limitations began on the date of the event rather than the date of discovery. In fact, KI's July 20 reply brief was none too subtle:

> I. S&P's Tort Claims are Barred Under Italian Law
>
> KI's opening brief established that the facts of this case require application of Wisconsin's "borrowing statute", and then recited the Italian law that sets the statute of limitations for torts (including unjust enrichment) at *five years from the accrual of the action not discovery*. S&P does not refute either point.

(Dkt. # 309 at 3)(italics in original.) Thus, not only did KI tee-up the central issue in its brief-in-chief, it did so in the very first sentence of the relevant section of its reply brief – in italics no less. Having flagged the issue, KI took the further step of pointing out that "S&P does not refute" the point.

Instead of contesting that statement, however, S&P again remained silent during the three and one-half months before this court issued its decision. It is true that normally a party's failure to object following the completion of the briefing schedule might not be very probative, as sur-replies are generally discouraged. But here S&P's failure to object cannot be chalked up to mere reticence. In fact, S&P *did* file a motion, on August 7, seeking leave to supplement its response to KI's motion for summary judgment. (Dkt. # 319.) Yet in that motion, S&P only objected to foreign law issues pertaining to the relationship between KI and Casala-KI, again making no mention of the statute of limitations; in other words, it once again conceded KI's statement of the statute of limitations and left undisturbed KI's statement that S&P had deliberately "not refute[d]" its position on the Italian statute of limitations.

In sum, silence in the face of an argument made during summary judgment would suffice on its own to justify a finding of waiver. But S&P went well beyond that. S&P conceded the point in its summary judgment brief and then failed to object even when that concession was pointed out;

17

it failed to object once KI's position was clear, and it never moved for relief under Rule 56(f). All of these factors evidence not just an oversight but a deliberate concession of the issue.

### 4. S&P's Presentation of the Case Justifies Denial of its Motion for Reconsideration

The conclusions reached above would normally end the matter, but S&P has cited authority noting that the ascertaining of foreign law is of crucial importance and should not be done haphazardly. (S&P perceives no irony in this argument). In other words, even if a party has inexcusably failed to contest a point of foreign law at an earlier time, S&P believes a court should overlook the general principles of waiver and reach the "right" result. Certainly, in the right circumstances, a court would have the discretion to overlook a party's waiver of an issue. *See, e.g., Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 751-752 (7th Cir. 1995). Yet I am persuaded that the nature of the contested question does not somehow trump the well-worn rules of waiver that preclude parties from raising new arguments after judgment when those arguments could obviously have been made earlier. *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 404 (7th Cir. 1986) ("Although the defendants attempted to raise the argument in their motion for reconsideration, a motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories."); *see also Green v. Whiteco Industries, Inc.,* 17 F.3d 199, 201 n. 4 (7th Cir. 1994) (objection to court's consideration of improperly filed document was waived when objection raised only in motion for reconsideration). Simply put, S&P's current argument about the Italian statute of limitations is a new legal theory in the truest sense – never in any pre-judgment filing with this court did S&P assert that KI's presentation of Italian law was incorrect.

The present motion, in fact, is strong evidence that such practices should not be tolerated by courts. The parties' arguments – especially when both sides are represented by counsel – are

precisely what frame a court's approach to an issue, and a court should be entitled to rely on what the parties argue in their briefs. *United States v. Brown*, 899 F.2d 677, 679 n. 1 (7th Cir. 1990) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") As the First Circuit has memorably put it: "[u]nlike the Emperor Nero, litigants cannot fiddle as Rome burns. A party who sits in silence, withholds potentially relevant information, allows his opponent to configure the summary judgment record, and acquiesces in a particular choice of law does so at his peril." *Vasapolli v. Rostoff,* 39 F.3d 27, 36 (1st Cir. 1994).[6]

Numerous cases support denial of S&P's motion for reconsideration. In the more typical case, a party seeks reconsideration in order to supplement the factual record after judgment has been entered. As the Seventh Circuit has noted in such a case:

> The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.

> The plaintiffs failed to offer any explanation at all as to why the information contained in the affidavits was not available to them when they opposed Shell's summary judgment motion. . . . In short, all of the evidence submitted by the plaintiffs in support of the Rule 59(e) motion was available to them during the summary judgment proceedings. Their attempt to show a genuine issue of material fact by supplementing the record at the Rule 59(e) stage of the proceedings was too little, too late.

*Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996).

---

[6] The same holds true for S&P's new argument that the Italian statute of limitations for torts might not apply to certain of its claims. As I explicitly noted in ruling on summary judgment, "In contesting KI's statute of limitations defense, S&P does not argue that Italy's five-year limitations period is satisfied as to any of these claims; it merely argues that Italy's statute of limitations is inapplicable." (Dkt. # 358 at 5 n.2.) S&P thus never argued that any other limitations period should apply.

19

Though the rule clearly forbids the introduction of new factual evidence that had been available earlier, the same is true when the party seeking relief seeks to introduce new *legal* theories into the case. In *Frietsch v. Refco, Inc.*, the defendant obtained dismissal of a lawsuit brought in the Northern District of Illinois on the basis of a forum selection clause stipulating that Germany was the proper forum. 56 F.3d 825, 827 (7th Cir. 1995). Following dismissal, the plaintiffs filed a motion for reconsideration and an affidavit citing a German law that would have precluded the defendant from enforcing the forum selection clause that was its basis for obtaining dismissal. Nevertheless, the Seventh Circuit refused to consider the foreign law affidavit:

> Critical as the argument is, we cannot consider it. The plaintiffs failed to lay the requisite foundation and have thus waived it. Granted, the meaning of foreign law is no longer treated as a strict question of fact to be proved in the same manner as other questions of fact, which is to say by sworn testimony and documents admissible under the rules of evidence. But *the only method by which the plaintiffs tried to bring to the district court's (or our) attention the German law on the enforcement of forum selection clauses was by submitting to the district court an affidavit of German law after that court had dismissed the suit, when the plaintiffs moved for reconsideration. The judge was not obliged to consider this belatedly submitted affidavit.* Nor are we. It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

*Id* . at 828. (citations omitted).[7]  A similar result was reached in a district court case involving

---

[7]S&P argues that this case differs from the present case because in *Frietsch* the notion of foreign law was wholly absent during the litigation and the plaintiff only sought to bring it up after judgment, which was insufficient notice under Rule 44.1. Yet the quoted language in *Frietsch* did not turn on Rule 44.1 so much as on the principle that an affidavit submitted after judgment need not be considered by the court. In so holding, *Frietsch* cited two standard waiver cases, *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir.1995); *Green v. Whiteco Industries, Inc.,* 17 F.3d 199, 201 n. 4 (7th Cir.1994), neither of which had anything to do with foreign law. Moreover, in both *Frietsch* and this case the allegation is that the result was incorrect because the correct principles of foreign law had not been applied, and thus it seems to be splitting hairs to suggest there should be some difference in approach depending on whether foreign law is raised for the first time after judgment or whether, as here, it is raised earlier but not objected to until judgment is entered.

foreign law: the plaintiffs submitted an affidavit from a German law professor in a motion for reconsideration, but the court refused to consider it:

> Plaintiffs admit . . . that 'Arthrex did not raise earlier the issue of the enforcement of the forum selection clause under German law because, quite frankly, it had not foreseen that this Court would dismiss all counts based on that clause.' As stated, because Plaintiffs did not assert this argument in response to the motion to dismiss, Plaintiffs waived the argument.

*Arthrex, Inc. v. Orthogen Aktiengesellschart,* 2006 WL 1805882, *3 (M.D. Fla. 2006).

Outside the realm of foreign law, reconsideration has also been denied in several other cases in which parties alleged that the court had applied an incorrect statute of limitations. In *Landrau-Romero v. Banco Popular De Puerto Rico,* for example, the plaintiff attempted to make a new argument about the statute of limitations' "discovery rule" on a motion for reconsideration. 212 F.3d 607, 611 (1st Cir. 2000). He also sought to assert an argument based on the "continuing violation" doctrine. The court rejected both efforts:

> To be sure, Landrau asserted a tolling argument in his motion for reconsideration pursuant to Fed.R.Civ.P. 59(e). It is well-settled, however, that new legal arguments or evidence may not be presented via Rule 59(e); rather, motions under that rule must either clearly establish a manifest error of law or present newly discovered evidence. As Landrau's tolling argument was available to him before judgment was entered, he could not raise it under Rule 59(e), and we are not obliged to consider it now.

*Id.* at 612 (citation omitted).

Similarly, the Eleventh Circuit rejected a plaintiff's effort to adopt a new post-judgment theory as to the correct statute of limitations. *Hill v. Oil Dri Corp. of Georgia,* 198 Fed. Appx. 852, 2006 WL 2591871 (11th Cir. 2006). Even though the result was clearly wrong – a four-year limitations period should have applied rather than the two-year period applied by the district court – the plaintiff was found to have waived the issue by failing to raise it earlier.

21

Under these circumstances, plaintiffs could have and should have raised the applicability of § 1658 's four-year limitations period in response to Oil Dri's summary judgment motion. Indeed plaintiffs' Rule 59 opening brief did not raise the § 1658 issue even though the Supreme Court had ruled three days earlier in Jones that § 1658 's four-year limitations period applied to some § 1981 claims, including newly cognizable § 1981 claims created by the Civil Rights Act of 1991. Accordingly, the district court did not abuse its discretion in refusing to consider the § 1658 four-year limitations issue raised for the first time in plaintiffs' reply brief in support of the Rule 59 motion.

*Id.* at **3.

Although the cases cited above all found waiver under similar circumstances, a case from this circuit *reversing* a district court's failure to consider a newly raised argument is actually just as supportive. In *Russell v. Delco Remy Div. of General Motors Corp.,* a race discrimination case, the Seventh Circuit found an abuse of discretion when the district court refused to consider the plaintiff's motion for reconsideration alleging legal error with respect to the applicable statute of limitations. 51 F.3d 746, 751-752 (7th Cir. 1995). The district court had applied the 180-day limitations period urged by the defendant, but the plaintiff argued on reconsideration (in a motion joined by the EEOC) that a 300-day period should have applied. In reversing, the Seventh Circuit relied on at least two factors that are notably absent here. First, the court noted that the plaintiff had been unrepresented by counsel for much of his case and the record was unclear as to whether the absence of counsel had played a role in the plaintiff's failure to contest the statute of limitations issue. *Id.* at 751 n.2.

Second, the court found that application of Title VII and its statute of limitations were matters with which federal district courts should be abundantly familiar. In other words, because the statute of limitations question was "not a novel issue" and should have been "well-known to Indiana's federal courts," the district court should have had some independent inkling – regardless

22

of what the parties had argued – that the shorter limitations period proffered by the defendants was

incorrect. *Id.,* at 750, 752.

> In most circumstances, a litigant will be in the best position to direct a court's
> attention to applicable legal principles and standards. This ideal is reflected in the
> principle that Rule 59(e) "motions cannot be used to raise arguments which could,
> and should, have been made before judgment issued." When rendering judgment,
> district courts should be able to assume that a litigant has fully stated his position;
> rules of waiver operate to enforce this result. However, *unusual cases like this one
> may require us to make the obvious assumption that the district court possessed a
> sufficient awareness of the applicable law to render further inquiry necessary. Title
> VII's timing provisions should be familiar to district courts.* A court should also be
> aware of the existence of a state agency which addresses discrimination claims.
> Here, these matters ought to have placed the district court on notice of the possible
> application of the 300-day filing period. Failure to inquire into that period on a Rule
> 59(e) motion was therefore error.

*Id.* at 752.

Juxtaposed against this case, *Russell* provides a stark contrast. The court viewed *Russell* as

an "unusual" case because it involved a *quasi-pro se* civil rights litigant (whose motion for

reconsideration was joined by the government) asserting a matter the federal court should have been

independently familiar with regardless of the defendant's arguments. By contrast, it seems clear that

the Seventh Circuit would not treat so leniently a commercial entity, represented by at least six

lawyers, that failed to object on multiple occasions to a characterization of its own country's law.

In short, none of the factors cited in *Russell* make this an unusual case crying out for lenience, and

instead *Russell*'s general observation applies in full force: "[w]hen rendering judgment, district

courts should be able to assume that a litigant has fully stated his position; rules of waiver operate

to enforce this result."

## 5. The Underlying Merit of the Case

Although the above discussion strongly suggests that the case should not be reopened, an

additional consideration in any exercise of discretion involves the underlying merit of the case.

23

Naturally, if a plaintiff had a particularly strong and worthwhile case, a judge might be more lenient in excusing rules of waiver. This is not one of those cases. At its essence, this was a patent infringement case masquerading under the guise of a smorgasbord of state law theories. Although certain of the facts about the parties' relationship are disputed, it was not disputed that the plaintiff never sought intellectual property protection for its design. Nevertheless, years later – once it believed KI had successfully incorporated and marketed aspects of that design – it filed suit in a belated attempt to bootstrap onto KI's success. Essentially, the plaintiff wants trade secret protection for something that was not a secret, and patent protection for something that was not patented.

Although my decision granting summary judgment to KI did not rule on the merits of S&P's state law claims, a brief review of its claims may be helpful in explaining why I am not inclined to require KI to expend further resources defending itself in this case, at least at the trial court level. As discussed below in part III, the fraudulent concealment claim (claim I) is based on a strained argument that KI was under some sort of obligation to inform S&P about its own activities before the patent office. In fact, as pled the claim is barely coherent. Claim II alleges breach of fiduciary duty. S&P bases this claim on the premise that the parties were engaged in a joint venture during the time the design was created in the mid-1990s. Yet there seems to be none of the indicia one would expect to find in a joint venture – mutual contribution of services or other value, agreement to share profits, common control, or even any evidence that the parties agreed to become joint venturers. *Spearing v. County of Bayfield,* 133 Wis.2d 165, 173, 394 N.W.2d 761 (Wis. Ct. App. 1986). The evidence S&P offers merely suggests that the parties had a run-of-the-mill on-again, off-again business relationship comprised of a few meetings and letters. To the extent there was joint effort on the project, there is no evidence of any agreement governing that relationship. All

24

sorts of design collaborations occur in the commercial world, but collaboration on its own does not mean the parties have entered into a joint venture. One can contribute ideas to another with the expectation that the two are simply engaged in a buyer-seller relationship, not a joint venture. For example, suppose an auto manufacturer hires a design firm to design a new car model. The manufacturer, of course, is also in the design business itself. No doubt the manufacturer and design firm will work very closely together, both contributing ideas to the project. Yet without an agreement to share profits or to create an independent "venture," the manufacturer is merely a customer who happens to be involved in the design of the product it wishes to purchase. The two entities are not going to market the car together and split up the profits, and no one would consider the new car model to be a "joint venture." The same appears to be true here: S&P has argued simply that the parties worked together on the design for a time, but it has not provided any evidence of the key agreements necessary to conclude that a "venture" existed: how would the project be sold? How would the profits be shared? Who exercised control over the venture? What happens if the parties decide to cease doing business? It is conceivable, though barely, that S&P's evidence could support such a claim, but the notion that the parties were joint venturers is hardly a strong one.

Claim III is a claim for correction of inventorship and is discussed in part II below. Claims IV and V allege misappropriation and unjust enrichment. In both claims, S&P essentially alleges that KI stole its design idea. The design was not patented, and so S&P has no recourse with a patent infringement claim. Yet neither was the design kept secret: no confidentiality agreement governed the design process, and S&P does not even allege that the design was a trade secret. To the extent KI "stole" anything, its design was based on publicly available documents. Having disclosed the idea without any patent protection, S&P is hard-pressed to argue that KI somehow misappropriated

Case 1:06-cv-00628-WCG   Filed 02/14/08   Page 25 of 30   Document 370

anything or was unjustly enriched. Indeed, allowing S&P to pursue some sort of state law claims on its publicly disclosed design would seem to render the patent system worse than useless – disclosure of an idea, once patented, comes with the grant of only a 20-year monopoly, 35 U.S.C. § 154(a)(2), whereas S&P seeks to enforce two quasi-patent claims that have no similar limitations.

> In general, if information is not a trade secret and is not protected by patent, copyright, or some other body of law that creates a broader intellectual property right than trade secrecy does, anyone is free to use the information without liability. . . . if the information is not secret and not protected by any of the laws that create property rights in information, it is in the public domain and freely usable without need to commit a tort or a breach of contract to obtain it.

*ConFold Pacific, Inc. v. Polaris Industries, Inc.,* 433 F.3d 952, 959 (7th Cir. 2006).

It seems very likely that the unjust enrichment claim is barred by *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 155-56 (1989), for the reasons noted in by the Seventh Circuit in *Confold Pacific*: the "claim comes down to a claim of infringement of a design that it did not patent. Such a claim is preempted by patent law, as held by the Supreme Court in the *Bonito* case." 433 F.3d at 960. S&P's "misappropriation" claim, though not subject to *Bonito Boats,* would seemingly fair no better. In fact, the Seventh Circuit in *Confold Pacific* strongly suggested that Wisconsin's "misappropriation" claim was of dubious lineage and viability. The claim originally arose out of a World War I news agency called INS that paraphrased and then reprinted the AP's news reports. *International News Service v. Associated Press,* 248 U.S. 215 (1918). Though the AP's reports were not copyrighted, the Supreme Court found that INS's immediate recycling of AP stories in its own reports essentially amounted to freeloading and a form of unfair competition. The Seventh Circuit sarcastically calls Wisconsin's misappropriation claim "this bequest by the Supreme Court to a number of states," and it is clear that if such a claim is even viable in this circuit, it must be narrowly moored to the kinds of considerations set forth

26

*International News Service* rather than the vague factors employed (albeit rarely) by Wisconsin's courts. To that end, the Seventh Circuit suggested a test promulgated by the Second Circuit, which echoed the original considerations found in the INS case; none of those factors have any bearing on a case like this one. 433 F.3d at 960. Suffice it to say that the viability of a state law claim for misappropriation is highly suspect, and it is certainly not the sort of claim that warrants reconsideration.

Finally, claim VI is primarily based on the suggestion that a KI entity misrepresented its intentions to S&P when, in January 1998, it feigned a lack of interest in the product but then later went ahead with it anyway.[8] Like the other claims, this one is plagued by multiple problems, not the least of which is the question of why a single statement of a KI employee could have such tremendous impact on how S&P ran its own business. In other words, it is difficult to envision how S&P would have been harmed by relying on KI's statement that it was *not* going to pursue the project. If S&P did rely on that statement, one would think that it would not just sit on its hands for several years – it would take some sort of action to capitalize on its design and protect it. Moreover, the statement at issue seems to be an expression of a current fact that may later have turned out to be incorrect – the fact that circumstances changed does not render the earlier expression "false" at the time it was made.

The problems described above are not the only ones S&P faces: KI has raised a defense of laches, which seems at least a viable defense in light of the time lapse described above. KI has also raised questions about S&P's standing to even bring the claims in this case, as well as the

_____

[8]The fact that S&P makes so much of this alleged misrepresentation suggests strongly that the parties were not engaged in a joint venture. In other words, the fact that KI could simply back out of the relationship with a mere letter indicates a lack of formality and other obligations attendant on joint ventures.

27

relationship between KI and its subsidiary, Casala-KI. These issues have been plagued by discovery disputes, but it is worth noting that S&P faces hurdles in addition to the ones described above. In sum, from the very beginning this was not the sort of case that cried out for remedial action; in fact, a review of the complaint's allegations does not engender sympathy for S&P so much as it causes one to wonder why S&P had taken so long to pursue its rights. Accordingly, in light of the other considerations noted earlier, I am unwilling to overlook S&P's waiver and reopen the case.

## II. Claim III: Correction of Inventorship

S&P also seeks reconsideration of my dismissal of its correction of inventorship claim. It asserts that the court erred by assuming that S&P was not an inventor of the patents at issue. In fact, S&P asserts, it was an inventor and has standing to assert a correction of inventorship claim by virtue of any accolades and intangible benefits it might receive.

In dismissing the correction of inventorship claim I noted that a non-inventor (like S&P, a partnership) could nevertheless have standing to sue for correction of inventorship if it had a financial interest in the outcome. I found that S&P's brief, however, disclaimed any financial interest in the outcome of an inventorship dispute. ("S&P does not argue that it has any financial or ownership interest in the patents.") (Dkt. # 358 at 11.) In fact, S&P cited *Chou v. University of Chicago,* 254 F.3d 1347 (Fed. Cir. 2001), a case whose principal holding is that an inventor *without* any financial or ownership interest in the patent may nevertheless have standing to sue in light of any intangible benefits she may receive by being *named* as an inventor. S&P attempted to take *Chou* another step further, however, and assert that S&P might have some intangible benefits to having its *employees* named as inventors. I rejected that attempt, noting that "*Chou*'s holding was moored to the possible reputational interest of the *inventor*, yet here there is no indication that S&P has any kind of reputational interest that could satisfy standing requirements." (Dkt. # 358 at 12.)

28

S&P now suggests for the first time that it *does* have a financial interest in the outcome of an inventorship correction. This is a wholly new argument and, for the reasons set forth above, will not be considered.[9] S&P further seeks to rehash its prior argument that it somehow has a reputational interest in "the accolades that confer with a patent," and complains that neither this court nor KI has explained why it does not. (Dkt. # 360 at 21.) Again, however, *Chou* is a case about *individual* inventors – the people who, if successful in their claim, could actually have their names listed on the first page of the patent. S&P and other entities (absent a financial interest) who would not be named on the patent do not share in the considerations set forth in *Chou*.

## III. Claim I: Fraudulent Concealment

Finally, S&P seeks reconsideration of this court's dismissal of its fraudulent concealment claim. In its motion, S&P continues its tiresome pattern of criticizing the court for, in effect, relying on the very brief S&P filed. S&P's brief on this issue consisted of two pages and was based almost entirely on its citation to the case of *Kaloti Enterprises v. Kellogg Sales*, 699 N.W.2d 205, 283 Wis.2d 555, 2005 WI 111 (Wis. 2005). In explaining why KI may have had a duty to disclose its applications for patents to S&P, S&P adopted the five-part test set forth in *Kaloti*.

Unremarkably (though grievous error in S&P's eyes) this court also relied on S&P's citation to *Kaloti* and found that the case did not apply. In a stunning about-face, S&P now states that its case was not based on *Kaloti* at all but really on the notion that S&P and KI were joint venturers – an argument found in a single sentence in its response brief. (Dkt # 299 at 24.) S&P's brief states that: (1) the parties had "worked together" on the CAMPUS project; it then jumps to the conclusion

_____

[9]The entire point of *Chou* involved standing for plaintiffs *without* a financial interest; it would make no sense for S&P to rely on that case if it was asserting that it *did* have a financial stake.

29

that (2) "[a]s a party to a joint venture, KI owed a heightened duty to S&P to disclose material facts." (*Id.*)  Needless to say, undeveloped arguments like this need not be considered in the first instance.  *United States v. Holm,* 326 F.3d 872, 877 (7th Cir. 2003).  Apart from that proviso, however, I noted earlier the problems inherent in S&P's claim that KI and S&P were joint venturers merely because they had "worked together" several years earlier.[10]  Accordingly, I see no reason to reconsider the dismissal of this claim.

**IV. Conclusion**

For the reasons given above, S&P's motion for reconsideration is **DENIED** is all respects.

**SO ORDERED** this ___14th___ day of February, 2008.


_s/ William C. Griesbach_____
William C. Griesbach
United States District Judge

---

[10] None of S&P's earlier arguments suggest a joint venture was created merely because the parties had agreed to share profits, for example.  (*See., e.g.,* Dkt. # 236.)

30